This case, as the Court can tell, has essentially three different phases of the trial process which are the subject of our appeal. First relates to sufficiency of evidence on the aggravated identity count under Section 1028A, that's Cap A. Second relates to a procedural error which took place during the course of the deliberative process. And then the last issues relate to the application of a minimum mandatory sentence under Section 1028A and the appropriate discretion that the trial judge, we contend, should have applied in the course of fashioning the sentence. Now, the biggest hurdle here is to try to communicate to the Court exactly what happened in the deliberative process in this case, and I'm going to start with that issue. This case had started off with two doctors, a husband and wife, who were involved in a pain management clinic. And their pain management clinic was probably unlike most of the medical practices that most people have seen. Their approach to pain management was what they referred to as a holistic approach. And what that basically meant, that unlike the pain management practices that we hear about every day involving the use of opiates and very strong medications, their approach to pain management was in a different format whereby they were using psychotherapy, psychiatric care, and then a variety of modalities and procedures that did not involve the use of these medicines. The practice had been in existence plus or minus 30 years, and during the course of that 30-year period, the husband and wife had built up a practice where people came. And many people did very, very well. Their practice involved certain procedures using the current procedural terminology manual, which I'm sure the Court is familiar with, the CPT codes. And then over a period of time, the CPT codes had changed, and they changed in a way that sort of incorporated different types of elements, different levels of supervision. And in essence, the defense in this case was that these are doctors who had had a longstanding history of providing quality services, but that the increase in supervision and oversight had changed the kinds of procedural requirements that were necessary in order to bill and to be reimbursed depending on the benefit plans. What the case involved was, from the very outset, a defense that was founded in essentially good faith, the fact that these doctors had been serving real patients with real problems and had been providing medical care and treatment to them. And the allegations in the case at the outset were that the services that were provided by the appellant and his wife were services that were without medical necessity. And that very short phrase is really the crux of the first issue, without medical necessity. I don't have to tell the Court that what essentially happened here from the opening bill, from the opening statements that were made in this case, the defense lawyers argued vigorously to the Court that these were real doctors who had their patients' interests at heart, that this was a situation where there's no phony bills that were submitted, there's no phony patients that were involved. Weren't they billing for office visits when they weren't in the office? Indeed, there were instances where that, in fact, did happen. Were you to say those mistakes? I could say to you that there are mistakes from the standpoint that the doctor, in order to be reimbursed for that under the plan, under the CPT code, and under the particular plan for reimbursement, required a physician to be present. I can tell you that. As to whether it's a mistake, the issue really came down to, was the service provided? And the reason that I lead to that is that it sort of takes us into the second argument, and I think they kind of overlap. But the issue here was, the medical necessity was that they were providing physical therapy, which is essentially the procedure that you're referring to. And so physical therapy required that that be done in the presence of a physician. So one of the debates in the case was, if you were standing in the other room, in the ante room, were you physically present? And so there was a dispute as to what physically present meant. Did that mean in a private office while the patient was on an exercise bike or something like that? Ultimately, it obviously was resolved against them. But the issue in the case was, the defense position argued about as vigorously as could be done, that these doctors did not have a fraudulent intent and did not have the intent to defraud the government, that these were real services for real patients who were in need of medical attention. Now, the medical necessity issue was in the indictment. And it was in the indictment, and when the case was tried, there was no evidence at all of medical necessity as being an issue presented by the government.  When the charge conference came on, the issue of including the language in the indictment, that the procedures were done without medical necessity, was resolved, and everybody, the government and the court, agreed that the issue of medical necessity should not be presented to the jury. It was not an element of the offenses? Is that the reason you all agreed to that? It was not an element that had to be proven? Well, it could have been an element. But what happened was, you could prove it with it or without it. You could say that it was without medical necessity. But what happened was, when the case was tried. It wasn't proven here? It wasn't proven. It wasn't involved? It wasn't involved from the government's perspective. It was not involved from the government's perspective. So it became surplusage in the indictment? As far as the indictment was concerned, they did not pursue that. I'm not sure if it was surplusage. It simply was not presented. So what happens is, the defense lawyers get up, and they argue on behalf of the appellants, and they're saying that there's no evidence of any phony billing. The services that were billed were provided, albeit subject to my earlier qualification that maybe the doctor was not physically present, as Judge Traxler asked. But the service was provided. So the question then became, was that service reimbursable if the doctor was not physically present? Not that the service wasn't provided. So the medical necessity issue was argued to the jury. There were employees who testified in favor of the appellant. There were other patients who were called as government witnesses who testified about the efficacy of the treatments that were rendered. And so at the end of the case, the defense position was that in terms of scienter, in terms of a criminal intent, that it was such that the doctors were providing real services. So here's where it went awry. The trial judge conformed the proposed instructions to what everyone in the charge conference had agreed. And I'm not trying to throw anybody under the bus, but this is how it went down. The administrative assistant was trying to keep up with the changes that were being made. The version of the charging instructions themselves, the documents, were not edited to remove medical necessity. So the jury was told by the court, I'm giving you instructions, and those instructions are binding on you, as the standard instruction would be. And you're going to get a written copy for yourself for you to utilize in the course. So the instructions that are going back to the jury are telling the jury, the government has to prove more than they really have to prove. That's correct. That's to your advantage. It would have been to my advantage. And as it turned out, the government objected when it became clear that that's what happened, because the government said it was prejudicial. Because now what you've told the jury is that there's an additional element, and we didn't think it was in the case, and you've now told that this is terrible, that there's a prejudicial effect on the government, because now the jury believes that we have to prove this. So now the government alleges prejudice, but you've got to show prejudice to your client. Well, respectfully, respectfully. I understand. What happens here is the first test is was there an error. And I dare say that I do not believe that anybody, the court, the government, or the defense would suggest to you there was not an error in this case, and that that error was a significant error. And there's a colloquy that we've identified in the brief, and the court has the joint appendix, page 685 to 715. And that's that whole exchange that took place between defense counsel, the government, and the court. And what basically transpired was this. The court said, what do you think we ought to do? Defense counsel stood up and said, listen, don't do anything other than give them the right instructions, get the old ones back, and let's just leave it as it is. And the judge said, well, that sounds like a good idea, because what was going on was the fact that there was closing statements that had been made by defense counsel, arguing that medical necessity was not an element of the case, but an indicia of good faith, that to remove that at the, not the 11th hour, we passed midnight, to remove that element from the jury's consideration effectively allowed the judge, and I'm sort of paraphrasing what the position was, to have the trial court provide sur rebuttal on behalf of the government by saying that what these fellows told you at the time of the closing argument really didn't matter, because the medical necessity issue that's in those instructions really shouldn't be there, and these guys just spent an hour and a half or two trying to explain to you why medical necessity was important. And everybody understood that, including the trial judge. So the trial judge now faced with a dilemma. And what you see in that colloquy is, is defense counsel trying to figure out a way, along with the government, of what do you do under these circumstances? And what was said was, just send it in, leave it alone, and that's where it should stop. The judge did that. Send what in? The corrected, the corrected instruction. In writing, nothing was done orally. Is that what you're saying? The only oral statement on the jury instructions, the only oral statement was from the trial judge in the first instance, and those instructions to the jury were admittedly correct. The oral instructions were correct. Yes, sir. The written instructions went in incorrect and then went back in corrected. They went back in corrected, but if that's the end of the story, I probably wouldn't be standing here explaining this to you. What happened next is where the problem came up. What happened next was the jury said, well, listen, we've been at this thing for a long time now, and we've got notes on our original jury instructions. And as a result of that, with the court's permission, I'm going to take two more minutes. Just take it off his reply. If you would, please. And what the court said, no, we're going to let them have the original copies. So what happened was they got the old copies back. So the only question was there were no bets taken as to how long it was going to take them. He told them not to pay attention to the instructions, just look at the notes. Right. So now the instructions go back, and it didn't take very long for the jury to come back, and they did, and obviously found the defendants guilty of all counts. The whole thing comes down to the point of giving them the old instructions, the initial instructions with the notes back. That's a discretionary call. Well, except I respectfully don't think it's a discretionary call, because what happens is the timing of this, if this had happened during the course of the trial, I think you're in a different ballpark. No to the prior case. But it's a different arena. And the reason it's a different arena is that during the course of the trial, whatever happens at that closing argument, you know at the time that you address the jury exactly what the state of affairs would be. In this case what happened, there was a final argument that was given, and then after the final argument's over, you wind up with a set of instructions that basically says what these fellows told you really and right. So it undercut the credibility of the defense lawyers, you're saying. Well, I'm not sure it was just the defense lawyers, because hopefully it was the. Prosecutors. No. Let me just say this, because it may be lost. There are some cases where you can point the finger, and there are case law, you know, this was obviously not an intentional thing. This was not intentional by anybody's part. So this is not a question of the intentionality. What this is is that when that jury received information or the case was over and the case was submitted, at that point in time, there's no opportunity for any cross-examination. There's no opportunity for any further explanation. There's no opportunity to have the defendant articulate whatever position that the defendant might want under those circumstances. The reason Rule 30 stands for the proposition that you have to tell everyone what you're going to give at the time that you give it is to afford the parties an opportunity to fully address whatever the issues are. Go ahead and answer the question. Yes, sir. We know that was an error. You've explained it pretty clearly in the brief what happened. But you didn't ask for a new trial, did you? Okay. You didn't ask for a new trial, notwithstanding the errors that were outlined here, to give the judge below a chance to rule on any issues regarding to the matters that you have raised. I've heard that argument or I've read that argument in the brief. Is that correct? That is correct. And that is what the government has said. So I'm going to answer the question that the court has put to me now as opposed to waiting for rebuttal because it's on the table. Rule 33, which is what we're talking about, government argues that that is preclusive and that the failure to file that new trial motion in some way or other bars the ability to seek a new trial. And that's just simply not the law in this circuit and it's not the law. There are two different arguments that come up with a motion for a new trial. If not filing a motion for a new trial had a preclusive effect, which would mean that it's jurisdictional in nature, that you can't do an appeal if you haven't filed a motion for a new trial, then, Judge, I would tend to agree with you, except that, number one, the case law doesn't say that. The rule doesn't say that. And ultimately, this court on a number of occasions that we've cited in our trials, where the interest in the test is this, interests of justice show command. And the burden is on you, since you raise the issue of a new trial now, the burden is on you to show certain factors, such as that this error had a substantial impact on the substantial rights of your client. Respectfully, I'm not sure that we agree with that. And I'll tell you why. If the issue here is the identification of an error in the trial process, which is what happened. Everybody agrees there was an error. The burden does not shift to the defendant. And I'm going to get into why that new trial motion is not in the context of the way the court has outlined it. For Rule 29, jury instruction, you're absolutely right. Or, not jury instruction, motion for judgment of acquittal. Absolutely right. Because at that opportunity, the court would have the ability to conform whatever it was. The trial is over. We had a colloquy. And what is in the record is that exchange, where we begged, we were pleading, we did everything we could, short of going up there and taking the paper out of the judge's hands and saying, please don't send that back in. The issue that would come up in a new trial would be raising with the trial judge this exact issue. And it was raised. And it was argued. But doesn't Rule 33 require you to make the motion for a new trial? I don't believe so. I do not believe so. Because what happens is, what Connor is suggesting is that Rule 33 is a mandatory rule. If we identify in the hierarchy of what happens for error, if there is an error that is committed, there's a couple of possibilities. You go to Rule, I think, 52, which deals with harmless error and a plain error. And so under Rule 52, if it's a harmless error, ultimately, the government, once that error happens, the government is bound to put forth evidence to show that the impact of that error does not prejudice the defendant. And I think that is pretty well the law in our circuit. So the question then becomes, where in this process does that burden shift to the defendant in any way? And the answer is, I don't believe it does. Now, are we dealing with this from the standpoint of a plain error or a harmless error? Your Honor is asking, I mean, that's really the issue. This is not a plain error. And the reason it's not a plain error is because if it was, it is plain. In fact, the government has argued in its papers that the error was a plain error. You're saying it's not here on plain error review. It's not here on plain. But if you decide it, I'm not saying it is, but if the court decided that it was here on plain error review, it still doesn't have the necessary elements to show whatever it is that the government would need to show to get past plain error. And I got the name of this case. I've got it wrong. It's Ibecevich, and there's another case called Ince. I know I've butchered the name. So the point of it is, is that there are elements that have to be proven in order to get from plain error to the government satisfying its obligation to come forth with evidence. The centrality of the... Has he answered your question yet? Has he answered your question? I think we understand your position. You'll give a few minutes to reply. Let's hear from the government. Ms. Hayes. Thank you. Thank you, Mr. Marcus. Thank you, Your Honor. May it please the Court, Your Honors. I am here on behalf of the government. I also will note for you that I was one of the two trial attorneys, to the extent that's helpful to any of your questions. I was government counsel at the trial level as well. Your Honor, I'd like to start with... Mr. Marcus was defense lawyer. That's correct, Your Honor. You all went through this trial. We were there together. You're both right there. We were, sir. So, Your Honor, I'd like to start with the jury instructions issue. Your Honor, the parties both agree two things. One, that they were orally instructed correctly. And two, that the court ultimately provided the correct instructions in written form and instructed the members of the jury to rely solely on the correct instructions, so the correct oral instructions and the correct written instructions. Let me ask you something. Sure. If the court instructs orally correctly, which it did here, you said, and that's what the record reveals, the oral instructions were correct, and then gives the instructions in writing, and they're incorrect, which one controls? Absolutely, the oral instructions. The oral instructions control. The written instructions are simply to be an assist... Exactly, Your Honor. ...to help the jury. Exactly, Your Honor. When I was a prosecutor, none of our judges in our district ever gave the instructions in writing to the jury. They just instructed them and sent them out. And perhaps that should happen again. I don't remember any defense lawyer ever asking them to give them in writing. I mean, but it's developed, it seems like, down through the years. Now they give them all in writing. That's correct. Which gives rise to this possibility that we run into here. That's exactly right, Your Honor. But the law is, you say, that the oral instructions control. Absolutely, Your Honor. And they're instructed as such, so I'm going to instruct you... Now, Mr. Marcus said everybody agrees there was error. Certainly, when you look at the... Yes or no answer, I think. Do you agree that there was an error? There was an error. Whether or not that error affected the substantial rights... I understand all that. ...is a different question. I understand all that, but there was an error, you say. You agree that the government agrees there was error? There was an error, and it was corrected. Well, it was corrected. Yes. So do we review it for harmlessness or plain error? Your Honor, the government's position is that because, as Judge Jackson had pointed out, because the defendant did not move for a new trial before the district court, we're under a plain error review. However... You're saying that Rule 33 requires a new trial motion in order to preserve the question. That's correct, Your Honor, and I think the reason why that must be so... What in Rule 33 says that? Nothing, Your Honor, but neither does anything in Rule 29. I've got to say it in Rule 33. Your Honor, Rule 33 says that it must be filed within 14 days of the finding of guilt. But it's worse to say if you don't do it, you lose it. Your Honor, I... He raised it at the time when all this mess was going on, when the jury was trying to liberate and had the wrong instructions. He did raise it then. Your Honor, he raised how to... He raised it when it was... ...correct the issue. ...when it could have been corrected during the trial. Yes, but not a never once did he move for a mistrial or for a motion for new trial. What requires him to do that? Your Honor, I believe just like in the... I didn't know that you were required to do that either. You may be right, but I knew that you have to preserve it when the judge has an opportunity to fix it, which was during the deliberations. Your Honor, I think that the law that's set forth from the Fourth Circuit in the Supreme Court regarding Rule 29 is instructive. Just as in Rule 33... Judgment of acquittal. Exactly, Your Honor. Judgment of acquittal. We're talking about a new trial motion. You said 33, but 33 now usually doesn't say it. Your Honor, just as Rule 29 does not. Rule 29 only requires that the motion for judgment of acquittal be filed within that same 14-day period. Yet, because this Court has found that Rule 29, despite saying you must raise this or it's weighed, the Court has nevertheless found... Judgment of acquittal, they didn't prove an offense. The indictment's defective. There's something wrong with it. They throw the whole thing out. It's not talking about a new trial. But the rationale for why on Rule... It's all gone. Judgment of acquittal, it's gone. The rationale for why on Rule 29 it is important that you bring it up in the 14-day time frame set forth in the rule is the same here in Rule 33 in that the district court should have the first bite of the apple, the first crack at it to determine whether or not there was a prejudicial effect, and if so, whether or not a motion for new trial is warranted. But, Your Honor, regardless of what standard we're looking at here, we need to take a step back and realize there is absolutely no prejudice to the defendant here. As defense counsel, from the beginning, it was alleged in the indictment. First and foremost, to make this akin to evidence being presented that wasn't introduced at trial is absolutely bullox because they are actually instructed, and I can direct your attention to the joint appendix on 447, the oral instructions as well as both versions of the written instructions specifically say the indictment is not evidence. It is a mere accusation. So here, what we have is a situation that is more akin to an error in a jury instruction, at which point... Well, there's an error in the indictment, too. No, Your Honor. You over-alleged it, I thought. No, Your Honor, that is not true. Well, you said it was... Respectfully, the indictment, there was probable cause to believe at the indictment that these services were not medically necessary. At the pretrial conference, the government was the first to assert we are not proceeding under that theory of liability. There were two theories of liability. But you could have fixed it. You could strike surplus each from the indictment. And we, in fact, asked specifically, the government brought that up before the district court. Was the surplus each struck from the indictment? That's correct, Your Honor. It was actually struck from the indictment. It was so the way the district court does it is it does not send the indictment back. So the indictment is incorporated into the jury instructions. So the jury instructions itself say, count one says, and then it is a copy and paste job into the indictment. That was stricken from the language of the indictment. And the indictment is not evidence. So what we have here is, if you're going to... Even despite the fact that it was later corrected and the jurors are presumed to follow the instructions, which was rely on the correct jury instructions, if you look at the prejudicial effect, there is absolutely none. Defense counsel has even admitted that the government did not proceed on a medical necessity. There was no way... You may be absolutely right on all that. You may be absolutely right on all that. But I'm troubled by your trying to say it's harmless error. I mean, plain error. It seems to me like it's probably harmless error reviewed. Your Honor, and under... I may be right that there's no error because the judge corrected it and she has discretion to deal with it. When situations come up, the district judges deal with them. And she dealt with this. And you're trying to say, well, they can't even raise it on appeal. Your Honor, that is one argument. And all this hullabaloo about it during the course of the trial that you all stirred up. Judge Jackson, I... Didn't he forfeit his rights to raise this issue when he failed to file under Rule 33? Was there forfeiture? That's exactly right, Your Honor. The government's position is, A, I think it's a layered position in that it was either waived pursuant to Rule 33 being a claim processing rule similar to Rule 29, or it was forfeited. And at that state, the plain error review would apply because that waiver was forfeited. I think that's where I part company with you on that. I mean, it might not be error at all, but I don't know that... If you start turning it into a plain error review, it may be... Fair enough, Your Honor. It may be gone too far. Fair enough, Your Honor. And you litigated it right in the middle of trial. And you all started it by having the indictment messed up. Respectfully, Your Honor, the indictment... I know you say you didn't mess it up, but you had to fix it because you got the surplus each stricken, but you didn't strike it right. Well, Your Honor, respectfully, we did... The parties both agreed. The government brought it up. The government said, let's strike this from the indictment. Respectfully, there was an error outside of either of the parties' control that then resulted in the current. It was then later fixed. I think it's the government's responsibility to make sure it gets right. Your Honor, we do not see the government, nor neither party sees the written jury instructions before it goes back to the jury. You should. Your Honor, we might change that. You should. Certainly, you should. Your Honor, that is... You don't want to send them. I mean, you don't need to send them. You said the oral instructions take precedence. So maybe there the problem is that the counsel don't get a chance to go over the written material that's handed to the jurors. Respectfully, Your Honor, each chambers does... Maybe they didn't make the right objection. ...makes their own decisions. What I will say, Your Honor, is under any standard, plain error or harmless, the government prevails here. You might be right on that. So, Your Honor, with that, and if one were to look, I think perhaps set forth in the United States, when you're looking at an incorrect jury instruction, an error like that will warrant reversal of the conviction only if the error is prejudicial based on a review of the record as a whole. That's page 399 of that opinion. And that's what we have here. We have no evidence of medical necessity. There is absolutely no reasonable probability or likelihood that this error affected the ultimate conviction here. And that is because in four words that are put into a jury instructions that later the jury is instructed to not rely on if they had noticed it at all, coupled with the fact that there was no evidence. So at most, as Moy stated, this was a legally sufficient but factually unsupported allegation. Your Honor, certainly. You talk so fast, it's hard for me to follow. I apologize, Your Honor. That's all right. I had the same problem. Not the first time I've heard that. I want to go back to something that was just talked about. Are you telling me that it's common practice that something goes back into the jury room for them to look at that the lawyers have never seen? Just jury instructions, Your Honor. Yes, the written. I have never seen in my four and a half years. Yes, Your Honor. The chambers are expected that any changes that are incorporated is done by the administrative staff of the chambers. Just to make sure I understand the process. That's correct, Your Honor. Judge, did you have a question? No, I had a comment, but I'll keep that. Your Honor, so I think at the end of the day, this issue with the jury instructions is clear that under whatever standard, it was very much so not an issue. The trial judge who presided over it recognized that medical necessity or standard of care was not an issue. The government recognized it. There was no such evidence. There was no reasonable likelihood that the jury convicted on a medical necessity or were otherwise influenced or prejudiced by those words being put in the language of the indictment in the jury instructions that was later corrected. If Your Honors don't have any more questions on that, I'd like to turn to Judge Jackson. You're turning to where the court wants to go, and that's the question of the conviction for aggravated identity theft. The government has contended that there was use here because the names were in the application for reimbursement, so, therefore, that was use. And I want you to address that question, whether that's consistent with at least what some other circuits have said about the term use. That is exactly where I was going, Your Honor. And, Your Honor, the government respectfully would urge the court to decline to adopt the narrow and the restrictive definition of use set forth in the Sixth Circuit's decision of Medlock. Your Honor, Abdel Shafi. You didn't like that one much, did you? No, Your Honor. I did not, especially at the last hour when the judge actually found that case. It had been written, I think, within a week or so of our trial beginning. That said, Your Honor, Abdel Shafi, which is a Fourth Circuit published opinion out of this court, candidly it only addressed the element of without lawful authority. But it specifically was in relation to a health care fraud, meaning a fraudulent billing, and it determined that without lawful authority, even if the doctor had had the patient's information to use appropriately, it was still without lawful authority when it did not. The analysis in Abdel Shafi is, quite frankly, very compelling, and the government would submit somewhat controlling in this case because it addresses many of the arguments that the defendant now makes here today. For example, one of the rationales that the defendant posits and that the judge bought was that this use could not be so unfettered, the definition of use could not be so unfettered, that every claim submitted using a patient's identity would constitute a use pursuant to aggravated identity theft. That was raised exactly in Abdel Shafi, and it was rejected. In fact, the court specifically said that Congress's decision, and this is on page 610, Congress's decision to impose additional punishment on those who use another's identifying information to submit fraudulent claims for payment for healthcare-related services is not so absurd or glaringly unjust as to lead us to question whether Congress actually intended that plain language. Now, who wrote that opinion? Your Honor, I believe it was authored by Judge, I always mispronounce this, Agee? Agee? Judge Agee. Judge Agee, yes. I know it's a poor circuit opinion. It was authored by Judge Agee, and then Judge Niebuyer was also a signatory on it, and then a visiting judge for a visiting district judge, much like today. Those were the three judges on the Abdel Shafi case. And it's controlling. That's a published opinion. That's controlling precedent here. That's correct, Your Honor. So specifically, Abdel Shafi says that you must look at, and you don't need to pierce essentially the everyday definition of use. Does it conflict with this thing from the Sixth Circuit? Your Honor, the language within Abdel Shafi conflicts, in terms of the analysis of the congressional intent. Was it already a circuit split? No, Your Honor, because it's not directly controlling on the issue of the definition of use. Did you try to get us to create a circuit split? Your Honor, if you were to decline to adopt the narrow definition of use that the Sixth Circuit and Medlock did, yes, I believe that it would. We don't adopt it. And we urge you to. We don't adopt it. If we take your position, are we creating a circuit split? Yes, Your Honor. But didn't the Sixth Circuit also address this issue in Miller? Your Honor, they did address it previously in Miller. In the same way that they did in Medlock. Yes, Your Honor. Miller was not, if I recall correctly, and I admit I have not read Miller recently. Miller is our case? No, Your Honor. Sixth Circuit. Miller is a Sixth Circuit case that also addressed specifically the definition of use. The Fourth Circuit has not explicitly addressed the definition of use. So this is a matter of first impression for the Fourth Circuit. Is Miller post-Medlock? That was pre-Medlock, Your Honor. Well, then Medlock was guided by Miller. That's correct, Your Honor. That's correct. And, Your Honor, another issue that the defendant raises here that is specifically rejected in Abdel Shafi is this distinction between a basic use or an excessive use of the patient's identity. In footnote 5 of Abdel Shafi, candidly understanding it was a footnote, the courts explicitly found that the statute applies to, and I quote, the statute applies to any knowing use of another's identity information performed without a form of authorization required by law. Medlock takes a step of restricting the definition of use. Inappropriately, the government, I would submit. The definition out of Black's Law is to employ or to put to one's service. That's exactly what one does. When a doctor submits a claim to a federal health care benefit program, they are using that patient's identification to narrowly restrict it. It isn't warranted under the plain language. If you ID and falsely bill something, you're subject to this aggravated identity theft. That, I think, is an argument that is frequently raised, but it was explicitly that argument that any claim would be an aggravated identity theft was rejected by the Abdel Shafi court. And nevertheless, there are situations where one can submit a false claim and not be subject to an aggravated identity theft 1028 big A charge. Are you trying to get us to stretch Judge Agee's opinion? No, Your Honor. I think Judge Agee's opinion is instructive in terms of looking at the aggravated identity theft statute as it would apply to the definition of use. By your argument, any time anyone mentions the personal identity of an individual in making a claim, that's using it. Here, there was no conduct that impacted in any way adversely the creditworthiness of the individuals whose names were used here. Isn't that correct? Respectfully, no, Your Honor. In terms of the aggravated identity theft counts specifically not dismissed, pursuant to Rule 29 by the judge, those all involved OWCP, Office of Workers' Compensation Program patients who rely on OWCP and the trustworthiness of their doctors to submit those claims, they are frequently audited to ensure that what is being claimed by the doctors is in fact what is happening. So the services that they were getting provided, the times that they are, so it does impact maybe not creditworthiness in the general term, but absolutely the veracity of those patients were called into play. When the auditing of those patients and the interviews of those patients that were required, I mean, they are absolutely affected and have a prejudicial effect by the doctors inappropriately using their identity. What about the distinctions made between one who asserts himself as the individual whose identity he's using or substitutes that individual's identity into a fraudulent scheme has been his or hers versus one who does what the plaintiff did in this case, mentioned the names and identities and et cetera, without impersonating the individual? Respectfully, Your Honor, that doesn't, they don't, without lawful authority, and Abdel Shafi has said it doesn't have to be an impersonation type situation. It doesn't have to be a theft situation. It doesn't have to be an impersonation situation. The common definition of use is that one uses your identity during or in relation to one of the predicate offenses. You have been conflating the court's analysis of unlawful authority with use, and the court didn't directly address the matter of use in the previous Fourth Circuit opinion. That's correct, Your Honor. I know that you're using that analysis to help us try to understand how we should apply use here, but there was no analysis of the term use. I agree, Your Honor, and nor is the government saying that it was. The government understands that the definition, the application of use within the aggravated identity theft context is a matter of first impression for this court. But isn't our definition of use going to have to be consistent with the definition in Abdel Shafi's case? That's correct, Your Honor. That's exactly right, and I think that the analysis of the aggravated identity theft statute as a whole, as set forth in Abdel Shafi, is instructive regarding how this court should define use. Moreover, Your Honor, I think that what's important here is that there – so not only with Abdel Shafi, but also just looking at the plain language of the statute itself does not require restrictive or narrowing use or definition of use. And I think – I caution the court that if they were to apply – if you were to apply this more in a restrictive use as set forth in Medlock, we're opening up a very big can of worms into cherry-picking kind of when is it used. Because if you're thinking of it, when is it your general use in everyday life and everyday terms, you're all of a sudden going to be saying, well, in the legal context is it different? And it's going to go significantly outside the bounds of health care fraud or, in this case, wire fraud. For example, if you're going to start using – distinguishing between a basic use or an excessive use, for example, the phantom patient versus the – the phantom patient versus kind of the upcoding. I use another example in tax fraud. You have a tax return preparer. They are provided that individual's tax information. They think – the individual thinks that that tax information is going to be appropriately placed on a tax return. It's not. And, in fact, a refund is generated that is more than what that tax payer is entitled to, and the return preparer pockets it. In that case, if you were to apply Medlock's narrowing and restrictive use – definition of use, that would not be using that taxpayer's identification. But the only way that that fraud is committed is by using that taxpayer, or in this instance, that patient's identity information. And, Your Honor, I think – Your Honors, I think that is what's exceptionally important here, is to ensure that there is a uniform approach to the definition of use, which I don't believe Medlock does. And I'm just noticing, and I apologize, Your Honors, that my time is up. So you're asking the Supreme Court really to decide this issue if we follow your argument? Your Honor, I – you never know what the Supreme Court is going to do, but I certainly am encouraging that you decline to adopt this narrow, restrictive Medlock decision. Okay, thank you. Thank you, Your Honors. Mr. Marcus. Two minutes and reply, R.J. Thank you, Judge. Yes, sir. The trilogy, from an analytical perspective, is Abdul Shafi, 2010. Miller comes after that, and then ultimately it's Medlock. And the analysis on use is very tempting, and I certainly understand how the Court may want to say, well, you've got a Fourth Circuit decision deciding 1028A, that there is some consistency. The issues in Abdul Shafi dealt with the lawful authorization. The issue of use was described in infinite detail and analytically by the Sixth Circuit in Miller, where they went through the legislative history such as it was. It's not very exhaustive, and it really doesn't offer a whole lot. And the Miller Court went ahead and defined use, and they went through a whole bunch of gymnastics that was way above my pay grade and statutory canons on interpretation. The case in Medlock analyzed Abdul Shafi on the issue of use. So when the government comes in and says, well, we should really give this thing the broadest interpretation, the reality is the broadest interpretation is exactly contrary to what the Sixth Circuit said, and this circuit has not spoken on the issue of use. You're saying Medlock is not inconsistent with Abdul Shafi? I'm saying that I could say to you that Abdul Shafi had phony patients. One of the issues that separated him factually was there were phony patients in Abdul Shafi's case. I mean, they were just billing for people. The issue in Medlock was that they were real people. They were real patients. This case factually fits right over top of Medlock because there are real people. This isn't phony patients, people whose names and identities have been used in order to do the billing. So if the court were looking at it factually, if the court were looking at it legally, Abdul Shafi would not necessarily be inconsistent. And I see that my time is up, and I thank you very much. Thank you, Mr. Marcus. And I'll ask the clerk to adjourn court, and then we'll come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: William B. Traxler, Jr., Robert B. King, Raymond A. Jackson